IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Tony W. West,  )
    Plaintiff,  )
  )
v.  )  1:07cv759 (LO/BRP)
  )
Joseph Higgs, Jr., et al.,  )
    Defendants.  )

MAR 2 4 2008

## MEMORANDUM OPINION

Tony W. West, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, against Rappahannock Regional Jail ("RRJ") Superintendent Joseph Higgs, Jr., and RRJ employees B. Meade, L. Wallace and Lt. Norris. On December 20, 2007, defendants filed a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). Defendants served plaintiff with their motion, memorandum of law in support of that Motion and Notice pursuant to Local Civil Rule 7(K). Plaintiff was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he has filed a response.[1] For the reasons that follow, defendants' Motion will be granted and this case will be dismissed.

### I. Background

Plaintiff was incarcerated at the RRJ beginning on or about April 11, 2007. In May of 2007, plaintiff submitted a request to the RRJ's medical department asking that he be provided with prescription eyeglasses. Complaining that he had "headaches because of not having glasses" and no

---

[1] Defendants originally served a copy of their Motion to Dismiss, memorandum of law in support of that Motion and Rule 7(K) Notice to plaintiff at the RRJ. However, over a month earlier, plaintiff informed the Court that he had been transferred from the RRJ to the Powhatan Correctional Center. On January 9, 2008, defendants certified that they had served a copy of their Motion to Dismiss, memorandum of law in support of that Motion and Rule 7(K) notice on plaintiff at the Powhatan Correctional Center.

family to bring him glasses or money to purchase them with, he requested prescription eyeglasses "for nearsightedness." Defendant B. Meade responded that plaintiff should just have his family mail his glasses in. On July 11, 2007, plaintiff filed a grievance with RRJ's ombudsman, defendant Wallace, reiterating his request for prescription glasses. Plaintiff again complained that he couldn't "see that good" and suffered headaches because he did not have glasses. Plaintiff also reiterated that he did not have "anyone" who could bring him his glasses, which he stated were in his vehicle when he was arrested. Either in response to the July 11 grievance, or, in any event, subsequent to its filing, plaintiff received two memoranda.[2] The first memorandum, dated April 4, 2006 and bearing the name of defendant Higgs, RRJ's Superintendent, informs RRJ inmates that, as of the date of the memorandum, an optometrist would no longer provide eye examinations to RRJ inmates. By that memorandum, inmates were also informed that non-prescription reading glasses could be purchased from the inmate's correctional counselor. The second memorandum, dated August 16, 2007 and bearing the name of defendant Lt. Norris, informed RRJ inmates that, as of the date of the memorandum, all requests to receive prescription eye glasses would have to be submitted to the case manager or Lt. Norris for approval. The memorandum provides further that if the eyeglasses from the inmate's "property rack from his initial booking" were "unauthorized" the inmate would be so informed and would then be responsible for contacting outside family members or friends would could bring in glasses meeting RRJ's security specifications.

On or about July 25, 2007, plaintiff filed a 42 U.S.C. § 1983 complaint against the instant defendants and an individual identified as "Grimes," the director of medical services for RRJ. By

---

[2] Plaintiff alleges that he also received a response to his grievance from defendant Wallace. Wallace's response is discussed below.

Order dated September 11, 2007, plaintiff was informed that he had not stated a § 1983 claim against the named defendants and was directed to particularize and amend his complaint. Plaintiff filed an amended complaint omitting "Grimes" as a defendant. In the amended complaint, plaintiff asserts that he needs glasses to see and that without glasses, he is required to "strain" his eyes in order to do so, resulting in headaches, dizziness and "messed up" depth perception. Without prescription glasses, plaintiff asserts that "everything is blurry." He claims that defendants were deliberately indifferent to this serious medical need, in violation of the Eighth Amendment. Specifically, as to defendant Higgs, plaintiff asserts that Higgs is "in charge" of ensuring that RRJ inmates receive proper medical care and "made and distributed" the April 4 memorandum. As to defendant Norris, plaintiff asserts that he (Norris) "knowingly provided a memo which also deni[ed] me as well as other inmates glasses for nearsidedness, [sic] or glasses where a prescription is needed to obtain." As to defendant Wallace, plaintiff asserts that he received plaintiff's grievance and "knowingly look past [sic] the inc[i]dent" in his response on the grievance form. Finally, as to defendant Meade, plaintiff claims that she "look[ed] over the fact that [he] asked for glasses." Plaintiff seeks $2,003,193.40 in damages and injunctive relief in the form of an order that he be provided with prescription glasses.

Defendants have responded with a Motion to Dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Defendants take the following positions: that plaintiff has failed to state a claim on which relief can be granted because plaintiff has failed to state an actionable legal theory and because plaintiff has not alleged facts sufficient to make out a violation of his Eighth Amendment rights; that, in any event, plaintiff does not have a medical treatment claim against defendants Higgs, Wallace or Norris, all non-medical personnel, for lack of medical

treatment; and that all defendants are entitled to qualified immunity. In his response, plaintiff asserts that he has made sufficient factual allegations to state an Eighth Amendment claim against defendants, that his claims against the non-medical defendants survive because the "wrongdoing" of these defendants contributed to plaintiff's lack of medical care and that qualified immunity does not shield these defendants from an award of monetary damages.

## II. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." A Motion to Dismiss under Rule 12(b)(6) tests the sufficiency of a complaint and does not resolve contests surrounding the facts, the merits of a claim or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 1993 (1990). Accordingly, in considering such a Motion, the Court must presume that all factual allegations in the complaint are true and must accord all reasonable inferences to the non-moving party. See Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir 2005); Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). To survive a Motion to Dismiss, a complaint must contain enough allegations of fact "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). In evaluating plausibility, the Court may not rely on mere "labels and conclusions" or plaintiff's "formulaic recitation of the elements of a cause of action." Id. at 1965. Instead, the factual allegations must be enough to raise "a right to relief above the speculative level." Id. Where a plaintiff fails to "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id. at 1974.

Additionally, courts may also consider exhibits attached to the complaint. United States ex

rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Moreover, where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

### III. Analysis

#### A. Mootness

In addition to his claim for monetary damages, plaintiff seeks injunctive relief in the form of a court order requiring defendants to provide him with prescription eye glasses. When plaintiff filed the instant complaint, he was incarcerated at the RRJ, a regional jail in Stafford, Virginia. Plaintiff's subsequent correspondence with this Court reflects, however, indicates that he has been transferred from the RRJ to the Powhatan Correctional Center Reception facility ("PCC") and from there to the Buckingham Correctional Center ("BCC"), the latter two of which are facilities within the Virginia Department of Corrections. Plaintiff's ultimate transfer from the RRJ to the BCC renders moot his request for mandatory injunctive relief in the form of an order that defendants provide him with prescription glasses. Accordingly, this claim for relief must be dismissed.

It is well-established that the exercise of judicial power under Article III of the Constitution depends on the existence of a "case" or "controversy." This Court may neither render advisory opinions nor "decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971). A request for relief becomes "moot," thereby depriving the Court of jurisdiction to entertain it, "when it has lost its character as a present, live

controversy of the kind to avoid advisory opinions on abstract propositions of law." Md. Highways Contractor Assn'n, Inc. v. Md., 933 F.2d 1246, 1249 (4th Cir. 1991) (internal quotation omitted). In the context of incarcerated prisoners seeking declaratory and/or injunctive relief for civil rights lawsuits concerning the conditions of their confinement, the Fourth Circuit has consistently held that such requests are rendered moot when the inmate is transferred to the custody of another facility and there is no showing that he is likely again to face the subject condition at the same facility. See, e.g., Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 249 (4th Cir. 2005); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ("[T]he transfer of a prisoner render[s] moot his claims for injunctive and declaratory relief."); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987).

Here, as noted above, while incarcerated at the RRJ, plaintiff brought a civil action complaining about alleged violations of his civil rights by RRJ employees. Plaintiff has since been transferred out of the RRJ to the PCC and ultimately to the BCC. Plaintiff's claim for monetary damages against the RRJ defendants survives his transfer because plaintiff still retains a "legally cognizable interest" in the outcome of that claim, i.e., the assessment of damages against those alleged to have violated his constitutional rights. See Powell v. McCormack, 395 U.S. 486, 496 (1969); compare Mellen v. Bunting, 327 F.3d 355, 365 (4th Cir. 2003) (holding that students' claim for damages was not moot even though students had graduated during pendency of appeal) with Incumaa v. Ozmint, 507 F.3d 281, 285, 289 (4th Cir. 2007) (dismissing as moot a prisoner's appeal where prisoner sought only declaratory and injunctive relief and was transferred during the pendency of the appeal). Plaintiff's claim for injunctive relief, however, is rendered moot by plaintiff's transfer because his removal "from the environment in which he [was allegedly] subjected to the challenged policy or practice" eliminates his legally cognizable interest in the merits of obtaining

6

that relief. Incumaa, 507 F.3d at 287. Moreover, as there has been no showing that plaintiff is likely to be denied prescription glasses at his new facility, see, e.g., Slade, 407 F.3d at 249, this claim for relief must be dismissed as moot.

B. Claims against defendant Wallace[3]

Plaintiff's sole claim against defendant Wallace concerns the July 11 grievance. Wallace's July 23, 2007 response informs plaintiff that his grievance was received but was being returned to him for failure to comply with the applicable filing procedure, referred him to the inmate handbook, and informed him that the jail was addressing its polices and procedures regarding eyeglasses. Liberally construed, plaintiff claims that Wallace did not respond to the July 11 grievance in a manner that was satisfactory to him. To state a cause of action under § 1983, plaintiff must allege facts indicating plaintiff was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of

---

[3] In prisoner suits challenging conditions of confinement, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006) requiring complete exhaustion of correctional facility administrative remedies). To satisfy § 1997e(a)'s requirement of exhaustion, a prisoner must give his correctional institution a "full opportunity to consider the grievance," by complying with the institution's procedural requirements for filing grievances. Woodford, 126 S.Ct. at 2389 (finding a grievance unexhausted if the prisoner did not comply with the institution's procedural requirements). The "failure to exhaust [, however,] is an affirmative defense ... and ... inmates are not required to specifically plead or demonstrate exhaustion in their complaints." Jones v. Bock, -- U.S. -, 127 S.Ct. 910, 921 (2007). Plaintiff claims that he has exhausted his administrative remedies with respect to the claims raised in the instant complaint. However, although plaintiff's July 11 grievance form was returned to him for failure to follow the proper filing procedure, defendants do not claim that plaintiff has failed to exhaust his administrative remedies, nor do they provide any further information regarding the inmate or medical grievance procedures available at the RRJ. Accordingly, the Court proceeds to address the merits of plaintiff's claims without addressing whether plaintiff properly exhausted his administrative remedies.

state law. See West v. Atkins, 487 U.S. 42 (1988). However, inmates have no constitutional right to access to prison grievance procedures, and the presence of an inmate grievance procedure confers no substantive constitutional rights upon inmates. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Mitchell v. Murray, 856 F.Supp. 289, 294 (E.D.Va. 1994); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Plaintiff has failed to state a § 1983 claim against defendant Wallace because a prison or jail official's failure to respond to an inmate grievance in the manner of the inmate's liking does not implicate any constitutionally protected right. Moreover, to the extent that plaintiff is complaining that Wallace did not comply at all with the RRJ grievance procedure in response to plaintiff's July 11 grievance, such a claim fails to state a cognizable § 1983 claim. Flick, supra. As such, defendants' Motion to Dismiss will be granted as to plaintiff's claims against defendant Wallace.

C. Plaintiff's Vision Problems

As an initial matter, it is unclear whether plaintiff was a pre-trial detainee or convicted prisoner at the time he filed either the original or the amended complaint in this case.[4] If plaintiff was a pre-trial detainee during the time of the events or omissions about which he complains, his claim for denial of a medical or corrective device would be analyzed under the Fourteenth rather than the Eighth Amendment. The Supreme Court has yet to decide what standard should govern claims of denial of medical care asserted by pre-trial detainees, thus far observing only that the "Fourteenth Amendment rights of pre-trial detainees 'are at least as great as the Eighth Amendment protections

---

[4] In the original complaint, and the exhibits appended to his amended complaint, plaintiff indicates that he was taken into custody at the RRJ "off the street" and makes reference to the fact that his glasses were in his vehicle when he was arrested. In response to defendants' Motion to Dismiss, however, plaintiff makes reference to matters concerning "the court in which [he] was sentenced ...."

available to a convicted prisoner.'" Patten v. Nichols, 274 F.3d 829, 834 (4th Cir. 2001) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)); see also Bell v. Wolfish, 441 U.S. 520, 545 (1979) ("[P]retrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners."). The Fourth Circuit, however, has concluded that such claims are governed by the Eighth Amendment's standard of deliberate indifference. Patten, 274 F.2d at 834; see, e.g., Brown v. Harris, 240 F.3d 383, 388 (4th Cir 2001). Accordingly, plaintiff's claim will be analyzed under that standard.

It is well-settled that prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if such care is inadequate. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). However, in order to establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105; see also Staples v. Virginia Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted.

First, plaintiff must allege facts sufficient to show that he suffers from a sufficiently serious medical need. See, e.g., Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). A serious medical needs is "one that has been diagnosed by a physician as mandating treatment," "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," or one where denial or a delay in treatment causes the inmate "to suffer a life-long handicap or permanent loss." Coppage v. Mann, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (citations omitted); see Sheldon v. C/O Pezley, 49 F.2d 1312, 1316 (8th Cir. 1995); Cameron v. Sarraf, 128 F.Supp.2d 906, 911 (E.D.Va.

2000).

In some circumstances, a vision impairment may so severe as to rise to the level of a serious medical need. See, e.g., Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996) (concluding that an allegation of double vision, loss of depth perception and near blindness was sufficient to state a serious medical need); Benter v. Peck, 825 F.Supp. 1411, 1416-17, 1419 (S.D.Iowa 1993) (holding that a legally blind inmate with 20/400 vision who needed eyeglasses to work or function in the general prison population had a serious medical condition). However, less severe vision impairments do not qualify. See Bellah v. McGinnis, No. 94-1704, 1994 WL 664926, at * 1 (6th Cir. Nov. 23, 1994) ("[M]oderate nearsightedness does not constitute a serious medical need."); Glass v. Orleans Parish Criminal Sheriff, No. Civ. A. 04-3353, 2005 WL 1501019, at * 3-4 (E.D.La. June 22, 2005) (granting summary judgment in favor of sheriff on inmate's claim that moderate nearsightedness was not a medical need sufficiently serious to implicate constitutional protections); Swaissi v. Cotten, No. 3-01-CV-1607-D, 2002 WL 492905, at * 2 (N.D. Tex. Mar. 28, 2002) (nearsightedness causing an inmate to have difficulty reading, writing and watching television was not a serious medical need); see also Roddy v. McBride, No. 93-4063, 1995 WL 377062, at * 2 (7th Cir. Apr. 26, 1995) (finding that deterioration in an inmate's eyesight resulting from the failure to provide eyeglasses was not a serious medical need demanding "immediate" attention).

In the instant case, plaintiff claims that he suffers from "nearsightedness" and has worn prescription glasses since he was 11 or 12 years old. In the absence of such glasses, plaintiff asserts that "everything is blurry" and that he must "strain" his eyes to see, resulting in "severe" headaches. He claims further that his headaches "got worse" the longer he went without glasses and makes a conclusory claim that his depth perception worsened the longer he went without glasses. The Court

is of the opinion that plaintiff has failed to allege a vision impairment that rises to the level of a "serious" medical need. Although plaintiff may have suffered discomfort and inconvenience in the absence of prescription glasses, he has failed to allege facts sufficient to show that his uncorrected vision impairment was of such severity that it would be "obvious" to a lay person that the impairment merited a doctor's attention. Notably absent from the complaint is any allegation of fact suggesting that plaintiff could not work or function in the jail population as the result of his uncorrected vision impairment. Plaintiff does not allege facts suggesting that he was suffering from "near" or "legal" blindness or could not see well enough without prescription glasses to prevent walking into or falling over objects or people in the jail. Further, nothing in the complaint suggests that without prescription glasses plaintiff could not perform, or was somehow impaired in his performance of, any tasks inherent in or necessitated by daily jail life during his stay at the RRJ. Moreover, although plaintiff makes a conclusory claim that his depth perception worsened in the absence of prescription eyeglasses, neither that claim nor any other allegations in plaintiff's pleadings show that a denial or delay in obtaining prescription eyeglasses would result in some kind of permanent harm to his eyesight or has caused some type of vision handicap. Finally, although plaintiff alleges that he has been wearing prescription eyeglasses since his youth, the Court is unwilling to convert this allegation into a claim that plaintiff's vision impairment has been diagnosed by a physician as mandating treatment or correction. On this basis, the Court concludes that plaintiff has failed to allege facts sufficient to state a serious medical need.

Additionally, plaintiff has also failed to allege facts sufficient to show that defendants acted in a way that was deliberately indifferent to any serious medical need. For this second, subjective prong, plaintiff must allege facts sufficient to show that defendants knew he faced a substantial risk

of serious harm and disregarded that risk by failing to take reasonable measures in response. Farmer v. Brennan, 511 U.S. 825 (1994). An assertion of mere negligence or even malpractice is not enough to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Both medical and non-medical prison employees may be liable under § 1983 if they acted personally in the deprivation of plaintiff's rights. Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). To establish that a medical or health care provider's actions or omissions constitute deliberate indifference to a serious medical need, that defendant's actions must be so "grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 850 (citations omitted). Non-medical prison employees can be found to have acted with deliberate indifference if they intentionally delay or deny an inmate access to medical care or intentionally interfere with his prescribed treatment. Estelle, 429 U.S. at 104-05.

In this case, it appears that the only medical defendant is "B. Meade, LPN," who appears to have responded to plaintiff's medical grievance requesting eyeglasses. Plaintiff complains that Meade "looked over the fact that [he] asked for glasses on [the] medical slip" and then "fail[ed] to act." But nothing in plaintiff's May, 2007 request to which Meade ultimately responded could be construed as putting Meade on notice that plaintiff faced any risk of serious harm, much less substantial risk of harm, that would require her to respond with reasonable measures.[5] As to the non-medical defendants, Higgs and Norris, whom plaintiff alleges "made and distributed" and "provided"

---

[5] Additionally, other than this one request and response, the complaint is devoid of factual allegations which suggest that plaintiff had any further interaction with or made any other requests of defendant Meade concerning his vision needs. Nothing in the complaints or exhibits suggests, for example, that plaintiff ever requested of Meade or any other defendant permission to have his eyes evaluated by a medical professional and was denied.

the April 4 and August 16 memoranda, such allegations are not sufficient to state a claim of deliberate indifference. Neither these allegations nor anything else in plaintiff's pleadings or attachments suggests that either Higgs or Norris were personally involved in the intentional denial or delay of medical treatment for plaintiff's vision impairment.[6] Accordingly, plaintiff has failed to state a claim against Meade, Higgs and Norris as well, and the instant complaint must be dismissed.

## IV. Conclusion

For the foregoing reasons, defendants' Motion to Dismiss the complaint will be granted and this action will be dismissed with prejudice. An appropriate Order shall issue.

Entered this 24th day of March 2008.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[6] That the RRJ may not have had an optometrist to provide inmate examinations or that it may have had a policy governing the distribution of glasses from the inmate "property rack" does not equate to a claim that Norris and Higgs, even if their names were on the memoranda outlining those policies, somehow prevented or delayed plaintiff from obtaining medical treatment for his vision impairment.

13